IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOANNA DYKES, et al.,

    Plaintiffs,

vs.                                  CASE NO. 4:11cv116/RS-WCS

ELIZABETH DUDEK in her
official capacity as Secretary of the
Florida Agency for Health Care
Administration, et al.,

    Defendants.
_____

## **ORDER**

Before me are the Defendants' Motion to Dismiss Amended Complaint (Doc. 45) and Plaintiffs' Response in opposition (Doc. 50).

### Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient facts, which accepted as true, state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 1974 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984). In making this determination, the court must accept all factual

allegations in the complaint as true and in the light most favorable to Plaintiff. *Christopher v. Harbury*, 536 U.S. 403, 406, 122 S. Ct. 2179, 2182 (2003).

## Background

This is a purported class action by individuals with developmental disabilities who are eligible to receive Medicaid. (Doc. 30, ¶ 1). Plaintiffs receive care in one of two settings: in intermediate care facilities for the developmentally disabled ("ICF/DD") or in the community under Florida's Home and Community Based Services Waiver program ("DD Waiver"). Plaintiffs contend that Defendants have a lengthy waitlist for the DD Waiver program. The waiting period may exceed more than five years in some cases. *Id*. at 2-3. Plaintiffs also contend that Defendants have limited the funding for the DD Waiver program which results in a portion of institutionalized patients never being enrolled. Plaintiffs allege that Defendants' management of the DD Waiver program violates the reasonable promptness provisions of the Social Security Act ("SSA"), 42 U.S.C. § 1396(a)(8), violates the "Freedom of Choice" provisions of the SSA, 42 U.S.C. § 1915(c)(2), as amended, 42 U.S.C. § 1396n(c)(2), violates the Americans with Disabilities Act and the Rehabilitation Act, 42 U.S.C § 12101 *et seq*, 29 U.S.C §794, and is a violation of Plaintiffs Due Process rights under the Fourteenth Amendment.

## Analysis

**Medicaid—Reasonable Promptness**

Florida has elected to participate in the Medicaid program, 42 U.S.C. § 1396 *et seq*. By participating in the program, states are required to comply with applicable federal statutory and regulatory requirements. States are also required to create plans for implementing their Medicaid program. *Id*. at § 1396a(a). This plan must identify both the required and optional health care services that a state will provide.

There are eight required services—inpatient hospital services, outpatient hospital services, laboratory and x-ray services, nursing facility services, physician services, nurse-midwife services, certified nurse practitioner services, and freestanding birth center services. *See id*. at § 1396a(a)(10)(A) (requiring state plans to provide at least the services listed in § 1396d(a)(1) through (5), (17), (21), and (28)). There are an additional twenty-one optional services, for which a state may provide payment through their Medicaid program. *Id*. at § 1396d(a)(6)-(16), (18)-(2), and (22)-(29).

A state must comply with certain requirements for all services that the state chooses to offer, both required services and optional services. The "state-wideness requirement" ensures that medical assistance[1] must be "in effect in all political subdivisions of the state." *Id*. at § 1396a(1). In other words, services available in one part of the state must be available in all parts of the state. Additionally, the

---

[1] The term "medical assistance" is not defined by statute. Defendants contend that the term means "payment for all or part of a variety of healh care services listed in the Medicaid Act [as opposed to the state actually providing the services]." While there is a Circuit split over the definition of "medical assistance," the definition comports with my understanding of 11th Circuit precedent. *See Sabree v. Richman*, 367 F.3d 180, 181, n.1(3d Cir. 2004) (noting the circuit split); Doe by & Through Doe v. Chiles, 136 F.3d 709, 722 (11th Cir. 1998). The definition of "medical assistance" is not of critical importance in this case as the Plaintiffs do not seek the state to actually provide the service, but rather to fund the service.

"comparability requirement" ensures that medical assistance must be available in equal "amount, duration, [and] scope" to every Medicaid-eligible person in the state. *Id*. at § 1396a(a)(10)(B)(i).   A third requirement, the one in dispute here, is the "reasonable promptness requirement." *See* 42 U.S.C. § 1396a(a)(8).  A state must ensure that medical assistance is "furnished with reasonable promptness to all individuals." *Id*.

Plaintiffs argue that the reasonable promptness requirement applies to the DD Waiver program to the same extent that it applies to required and optional services. (Doc. 30, ¶ 121).  Plaintiffs contend that the lengthy waitlist for the DD Waivers is unlawful.  Defendants disagree and argue that the Medicaid Act permits the federal government to limit the number of people who receive waiver services.  (Doc. 45, p. 7). Defendants contend that only "eligible individuals" are covered by the reasonable promptness requirement, and that a cap on DD Waivers operates as a "constraint on eligibility." *Id*. at 10.  Defendants admit that Plaintiffs are entitled to enrollment in the DD Waiver program with reasonable promptness "if there are available slots." *Id.*

Because Plaintiffs have alleged that currently there are unfilled slots in the DD Waiver program,[2] I need not resolve the issue of whether the reasonable promptness requirement applies to the situation where all of the slots are filled.   Consideration of this issue is not appropriate until discovery can be presented about enrollment in the DD Waiver program.

---

[2] Plaintiffs allege that there are 31,500 slots for DD Waivers, that the number of DD Waiver recipients has been as high as 31,066, and that currently there are less than 31,066 persons in the DD Waiver program. (Doc. 30, ¶132).

**Medicaid—Freedom of Choice**

Plaintiffs' so called "freedom of choice requirement" is not nearly as expansive as their naming of the requirement might suggest. The Medicaid Act requires "individuals who are determined to be likely to require the level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded [to be] informed of the feasible alternatives, if available under the waiver. . ." 42 U.S.C. § 1396n(c)(2)(C). By its own terms, this section creates an obligation to inform, not an obligation to provide. Plaintiffs claim that Defendants failed to provide the "choice counseling." (Doc. 30, ¶191). Defendants contend that choice counseling is not required to include the DD Waiver program where no DD Waiver slots are available because that alternative is not "feasible" or "available." (Doc. 45, p. 12). Because Plaintiffs have alleged that slots are available, consideration of this requirement is best suited for a time when more information is available about the program.

Defendants also contend that Section 1396n(c)(2)(C) does not provide a private right of action. The Sixth and Ninth Circuit have found that there is a private right. *See Wood v. Tompkins*, 33 F.3d 600, 612 (6th Cir. 1994); *Ball v. Rodgers*, 492 F.3d 1094 (9th Cir. 2007). At this stage, I find no reason to disagree. *See Northwest Airlines v. County of Kent*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional.")

**ADA and Rehabilitation Act**

The factors to be considered under *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999), require factual determinations inappropriate at this stage. Namely, the ADA requires the placement of a persons with a disability in community setting when (1) the state's treatment professionals have determined that community placement is appropriate, (2) the individual does not oppose the placement, (3) the placement can be reasonably accommodated taking into account (a) the resources of the state, (b) and the needs of others with disability. (Doc. 45, *citing id.*)

**Due Process**

The "due process provision" of the Medicaid Act is 42 U.S.C. § 1396a(a)(3). This provision concerns *procedural* due process, not *substantive* due process. *See Gean v. Hattaway*, 330 F.3d 758, 772-773 (6th Cir. 2003). Section 1396a(a)(3) gives an opportunity for fair hearing to those whose claim for medical assistance has been denied or is not acted upon with reasonable promptness. Plaintiffs allege that they were never provided notice of their opportunity to be heard when they were placed on the DD Waiver waitlist. (Doc. 30, ¶229). Defendants contend that Plaintiffs are not "eligible" for the DD Waiver program, thus they have no procedural due process rights in being on the waitlist. Again, this claim turns on whether there are available slots.

Defendants' contention that there is not a private remedy under this section is also misplaced. *See Gean v. Hattaway*, 330 F.3d 758, 772-773 (6th Cir. 2003).

The Motion to Dismiss (Doc. 45) is **DENIED**.


**ORDERED** on August 30, 2011.

>  /S/ Richard Smoak
> **RICHARD SMOAK**
> **UNITED STATES DISTRICT JUDGE**