# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**JOANNA DYKES; DAVID WALKER,**
by and through his next friend, Michele
Beauregard; **LORETTA DAVIS,** by and through
her next Friend, Trish Mlekodaj; **HEATHER
YOUNG,** by and through her next friend Robert
Stark; **MICHELLE CONGDEN; AMANDA
PIVINSKI; JOSHUA WOODWARD;
ALYSSA FERRARO,** by and through her
next friend, Sharon Ferraro and **DISABILITY
RIGHTS FLORIDA, Inc., a Florida non-profit
corporation,**

**Plaintiffs,**

**v.**                                                     **CASENO.: 4:11-CV-116-RS-WCS**

**ELIZABETH DUDEK** in her official
capacity as Secretary of the Florida Agency
for Health Care Administration, and
**BRIAN VAUGHAN** in his official capacity
as (Interim) Director of the Florida Agency
for Persons with Disabilities, and
**RICK SCOTT** in his official capacity
as Governor of the State of Florida.

**Defendants.**
_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), Plaintiffs, by and through their

undersigned counsel, hereby move this Court for an order certifying this case as a class

action and in support hereof state as follows:

1.     This is a statewide class action brought on behalf of over 19,000 individuals with developmental disabilities, as defined by Florida Statute § 393.063 (9), who are eligible to receive services through Florida Medicaid in intermediate care facilities for the developmentally disabled (ICF/DD) and in the community under Florida's Home and Community Based Waivers for persons with developmental disabilities ("DD Waivers").

2.     The Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, the Medicaid Act and its implementing regulations, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act.

3.     The named Plaintiffs in this action seek certification of this case as a class action pursuant to Fed. R. Civ. P. 23(b) (2) to pursue resolution of all class members' claims.

4.     The proposed class consists of:

       a.  all individuals meeting the level of care required for placement in an ICF/DD who are enrolled on the DD Waiver waitlist, who are assigned to waitlist prioritization categories three through seven pursuant to Defendants' promulgated rules, and are capable of residing in the community with supports and do not object to receiving services in the community. Within this class there exist subclasses of those who (1) receive services in institutions or institutional-like settings and (2) reside in the community without services.

5.     <u>Numerosity:</u> The class is so numerous that joinder of all its members is impracticable. The Plaintiffs believe that there are over 19,000 class members, because it is believed that there are 19,000 individuals waitlisted to receive services through the DD

Waiver. What is unknown to Plaintiffs, but known to Defendants, is the dispersion of those putative class members among the Defendants' seven categories of waitlist prioritization. Although the exact number of waitlisted persons is known to the Defendants and is ascertainable, Plaintiffs do not know the exact number.

6.      Commonality: There are questions of law or fact that are common to all named Plaintiffs, as well as to all putative class members including:

    a.      Whether the Defendants' policies cause and perpetuate the unnecessary segregation and discrimination through continued institutionalization, or risk of institutionalization, of persons with developmental disabilities thus violating the ADA's integration mandate, as well as Sec. 504 of the Rehabilitation Act, as enforced through 42 U.S.C. § 1983.

    b.      Whether the Defendants' relegation of persons with developmental disabilities to a lengthy waitlist that has not moved at a reasonable pace violates the Medicaid Act's requirement for the provision of services with reasonable promptness pursuant to 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930 as enforced through 42 U.S.C. § 1983.

    c.      Whether the Defendants' failure to provide community services through the DD Waiver to the putative class members violates the Medicaid Act's requirement for the freedom of choice of provider of services pursuant to 42 U.S.C. § 1396n(c)(2)(C) and § 1396a(a)(23) as enforced through 42 U.S.C. § 1983.

    d.      Whether the Defendants' failure to notify persons enrolled on the DD

Waiver waitlist of their prioritization category and afford them opportunity for hearing violates their due process rights as stated in 42 U.S.C. §1396a(a)(3) and implemented by 42 C.F.R. § 431.220 *et seq.*

7.    <u>Typicality:</u> The claims of the named Plaintiffs are typical of the claims of the class. The named Plaintiffs and purported class are (1) Medicaid eligible recipients (2) precluded from home and community based services by being placed on a waitlist that has not moved at a reasonable pace, (3) without notice of their waitlist prioritization, (4) depriving them of the freedom of choice of providers, and (5) segregating them in institutions or subjecting them to the risk of institutionalization.

8.    <u>Adequate representation:</u> The named Plaintiffs will fairly represent and adequately protect the interests of members of the class as a whole. The named Plaintiffs do not have any interests antagonistic to those of other class members. By filing this action, the named Plaintiffs have displayed an interest in vindicating their rights, as well as the claims of others who are similarly situated. The relief sought by the named Plaintiffs is represented by counselors who are skilled and knowledgeable about civil rights litigation, Medicaid law, practice and procedure in the federal courts, and the prosecution and management of class action litigation.

9.    The Defendants have acted or refused to act on grounds generally applicable to the class, making final injunctive relief appropriate with respect to the class as a whole under Fed. R. Civ. P. 23(b) (2). Class members have been found to need and are eligible for these services as they meet the level of care required for placement in an ICF/DD, and have been denied an opportunity to receive prompt services on the DD Waivers. Without

prompt services on the DD waivers, the class members are at risk for segregation in institutions as no other means for services exist. A class action is superior to individual lawsuits for resolving this controversy.

10.     The proposed class definition is adequate and includes identifiable class members. Any member of the proposed class would have the requisite standing to sue on his or her own behalf in his or her own right.

11.     Plaintiff's counsel conferred with Defendant's counsel who stated that they will not agree to class certification.

WHEREFORE the Plaintiffs respectfully request that this court certify this case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) (2).

## MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

The purpose of class actions is to achieve efficiency and economy of litigation, both with respect to the parties and the courts. Gen. Tel. Co. v. Falcon, 457 U.S. 147, 159, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Plaintiffs bear the burden of meeting the requirements of Rule 23 for class certification. Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181 (11th Cir. 2003). Analysis of class certification requires the Court to accept the substantive allegations as true. In considering class certification, the Court need not determine the merits of the underlying claim, but may consider the merits of the case to the degree necessary to determine whether Plaintiffs have met the requirements of Rule 23. Id. at 1188.   The Plaintiffs bear the burden of proving that they indeed meet the necessary requirements for class certification and some aspects of the Plaintiffs' allegations and the Defendants proposed defenses are evidence of compliance with Rule

23. See Wal-Mart Stores, Inc. v. Dukes, 2011 WL 2437013, __ U.S. __, 131 S. Ct. 2541,
___L.Ed.__(2011).

  In this case, the Plaintiffs need services that currently exist for Floridians only by
succumbing to institutional placement. The seminal case for desegregation of persons
with disabilities was decided over ten years ago. Olmstead v. L.C. ex rel Zimring, 527
U.S. 581 (1999). Florida, aware of the effectiveness and cost-benefits of community
services, has noted "The Legislature finds and declares that existing state programs for
the treatment of individuals with developmental disabilities, which often unnecessarily
place clients in institutions, are unreasonably costly, are ineffective in bringing the
individual client to his or her maximum potential, and are in fact debilitating to many
clients." Fla. Stat. § 393.062.

  The state's intent is clear, yet, for the Plaintiffs' and putative class members, the
state's actions have stalled, sputtered, and regressed. Persons able to live in the
community have been diverted to institutions. Persons in need of services have lost skills,
sacrificed independence, and overworked their caregivers because they do not wish to
live in an institution in order to receive services. The availability of these services is
controlled solely by the Defendants' design and implementation of the Medicaid home
and community based waivers (the "DD Waiver") and its corresponding waitlist. The
Plaintiffs and proposed class members in this matter are challenging the lack of
community services for persons with developmental disabilities due to the Defendants'
actions and omissions that have cast them all in the same plight – forego services or give
in to institutional placement.

## CLASS DEFINITION

The proposed class definition in this matter is:

> all individuals meeting the level of care required for placement in an
> ICF/DD who are enrolled on the DD Waiver waitlist, who are assigned to
> waitlist prioritization categories three through seven pursuant to
> Defendants' promulgated rules, and are capable of residing in the
> community with supports and do not object to receiving services in the
> community. Within this class there exist subclasses of those who (1)
> receive services in institutions or institutional-like settings and (2) reside
> in the community without services.

The proposed class definition is adequate and readily identifies the class members by objective criteria. *See* Neumont v. Monroe County, Fla., 198 F.R.D. 554, 556 (S.D.Fl. 2000) *citing* O'Connor v. Boeing North American, Inc., 184 F.R.D. 311, at 319, (C.D.Cal. 1998) ("a class will be found to exist if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member"). Here, each named Plaintiff is currently enrolled on Defendants' DD Waiver waitlist and has been denied services by their placement on the waitlist. Moreover, each potential class member is readily identifiable by Defendants' own records and information. Thus, each named Plaintiff is a member of the defined class and the absent members of the class are easily identifiable by objective criteria. Furthermore, each member of the proposed class would have a live claim against each Defendant and standing to sue on his own behalf.

## PROPOSED CLASS MEETS RULE 23(A) CERTIFICATION REQUIREMENTS

### *NUMEROSITY*

Plaintiffs must show that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity does not require an exact number of class members be identified to show impractability of joinder, Plaintiffs must "proffer some evidence of the number in the purported class or a reasonable estimate." Leszcynski v. Allianz Ins., 176 F.R.D. 659, 669 (S.D. Fla. 1997). The Court should also consider the geographical dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. *See* Kreuzfeld A.B. v. Carnehammar, 4 138 F.R.D. 594, 598-599 (S.D. Fla. 1991).

In this instance, the proposed class consists of approximately 19,000 persons with developmental disabilities that have contacted Defendants and applied for home and community based services resulting in their placement into categories three through seven of Defendants' DD Waiver waitlist prioritization categories. The prioritization category ultimately affects a person's ability to effectuate their choice for services in the community in a reasonably prompt manner. Those in categories one and two, selected crisis cases and children who have open cases with the Department of Children and Families, have preference and receive available slots as current enrollees die, move out of state, or otherwise become ineligible. The joinder of all the members is impracticable due to the large size of the proposed class. The Defendants have the statutory obligation to maintain the list of persons that have applied for and are awaiting services as well as recording their contact information including addresses. *See* Fla. Stat. §393.065.

Through records requests to the Defendants, Plaintiffs' counsel can further specify the number of purported class members and subclass members. The subclass of individuals residing in institutions or institutional-like settings incorporates the Defendants' listing of 198 waitlisted persons residing in ICF/DDs, 115 residing in skilled nursing facilities, 69 residing in state-run developmental institutions and 1,136 waitlisted persons residing in what the Defendants term "other," i.e. psychiatric facilities, jail, independent living, and foster homes for adults. The second subclass incorporates the Defendants' identification of over 17,000 waitlisted person residing in "the family home" with parents, siblings, or other extended family members or friends. The proposed class consists of thousands of people throughout the state of Florida, making individual trials for each putative class member an inefficient use of judicial and party resources. The court may make common sense assumptions in order to find support for numerosity. Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1039 (5th Cir. 1981).[1] The size of the proposed class and the inclusion of future members make joinder impracticable in this matter. *See* Zeidman, at 1038. The requirement that the putative class be so numerous that joinder of all members is impracticable is clearly met in this matter. Fed. R. Civ. P. 23(a).

## *COMMONALITY*

Most recently, the United States Supreme Court declared that commonality for class representation requires a "common contention" that when the "determination of its

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 2011 WL 2437013, __ U.S. __, 131 S. Ct. 2541, ___L.Ed.__(2011). The crux of commonality is more akin to whether or not there is a single answer. The commonality test is met when the resolution of at least one issue will affect all or a significant number of the putative class members. Mullen v. Treasure Chest Casino, L.L.C., 186 F.3d 620, 625 (5th Cir. 1999), Forbush v. J.C. Penney Co., 994 F.2d 1101, 1106 (5th Cir. 1993). Where a common scheme is alleged, common questions of law or fact will exist. *See* Murray v. Auslander, 244 F.3d 807, 813 (11th Cir. 2001). The putative class members' plight involves questions of both law and fact that are common to all members of the proposed class and resting on wide-reaching, centralized decisions made by Defendants. These consist of:

    a.    Whether the Defendants' design and implementation of the DD Waiver and its waitlist perpetuate the segregation and discrimination of persons with developmental disabilities through continued institutionalization, or risk of institutionalization, violating the ADA's integration mandate, as well as Sec. 504 of the Rehabilitation Act, as enforced through 42 U.S.C. § 1983.

    b.    Whether the Defendants' relegation of persons with developmental disabilities to a lengthy waitlist that has not moved at a reasonable pace violates the Medicaid Act's requirement for the provision of services with reasonable promptness pursuant to 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930 as enforced through 42 U.S.C.

§ 1983.

c.     Whether the Defendants' failure to provide community services
through the DD Waiver to the putative class members violates the
Medicaid Act's requirement for the freedom of choice of provider of
services pursuant to 42 U.S.C. § 1396n(c)(2)(C) and § 1396a(a)(23), as
enforced through 42 U.S.C. § 1983.

d.     Whether the Defendants' failure to notify persons enrolled on the
DD Waiver waitlist of their prioritization category and afford them
opportunity for hearing violates their due process rights as stated in 42
U.S.C. §1396a(a)(3) and implemented by 42 C.F.R. § 431.220 *et seq.*

Commonality does not require complete identity of legal claims among class
members. Johnson v. American Credit Co. of Ga., 581 F.2d 526, 532 (5th Cir. 1978). As
stated in Wal-Mart Stores, Inc., one resolution to the common questions would resolve
the putative class' claims. Id. at 2551. "The mere presence of factual differences will not
defeat the maintenance of a class action if there are common questions of law." Pottinger
v. City of Miami, 720 F.Supp. 955 (S.D. Fla. 1989), q*uoting* Coley v. Clinton, 635 F.2d
1364, 1378 (8th Cir. 1980). The Plaintiffs and the putative class harbor only differences in
the degree of harm, regression, and loss of independence caused by the lack of
community services. This is no reason to defeat commonality as all of the Plaintiffs
implicate the Defendants' same actions and omissions. The Defendants have refused to
expand the DD Waiver to accommodate other persons in the state of Florida from
receiving those services. The Defendants have relegated each Plaintiff to a new

prioritization category, which does not provide an opportunity to receive services in the community. Any available slots are directed to categories one and two, failing to provide relief for the Plaintiffs. The challenged actions and omissions affect each Plaintiff and putative class member in the same manner –precluding them from receiving services in the community.

The Defendants actions and omissions have forced the Plaintiffs, Joanna Dykes, David Walker, Loretta Davis and Heather Young, into unnecessary institutionalization without hope of ever attaining services in the community because they will never be homeless, a danger to themselves or others, or without a caregiver while in the institutions. Others in the second subclass exist on the same continuum of this path to institutionalization. Without services, these Plaintiffs reside in the community without services experiencing regression in skills, loss of employment opportunities, the exhaustion of their natural caregivers, and eventually the inability to maintain their independence and place in the community. The Plaintiff class' harm is caused by the same challenged policies, rules, and design and implementation of the DD Waiver and its waitlist. For some, the unnecessary segregation of their continued placement in institutions is evident. For others, the plight of their selection for community services over institutional services is that they will receive no services at all. The putative class has commonality in the harm suffered as well as commonality in the cause of that harm – the Defendants' actions and omissions in the design and implementation of the DD Waiver and its waitlist.

*TYPICALITY*

When named Plaintiffs advance legal and remedial theories similar to those that

would be advanced by class members if they were pursuing parallel actions, the typicality

requirement is met. Mullen 186 F.3d at 625; Lightbourn v. County of El Paso, 118 F.3d

421, 426 (5th Cir. 1997). The named Plaintiffs here are "part of the class and 'posess the

same interest and suffer the same injury' as the class members." General Telephone Co.

v. Falcon, 457 U.S. 147, 156 (1982) (*quoting* East Texas Motor Freight Systems Inc. v.

Rodriguez, 431 U.S. 395, 403 (1977). In Kornberg v. Carnival Cruise Lines, 741 F.2d

1332, 1337 (11th Cir. 1984), the Court stated typicality exists when there is a

> [...]nexus between the class representatives' claims or defenses and the
> common questions of fact or law which unite the class. A sufficient nexus is
> established if the claims or defenses of the class and the class representative arise
> from the same event or pattern or practice and are based on the same legal theory.
> Typicality however, does not require identical claims or defenses. A factual
> variation will not render a class representative's claim atypical unless the factual
> position of the representative markedly differs from that of other members of the
> class.

The Defendants' actions and omissions as applied to those in waitlist

prioritization categories three through seven violate the Plaintiffs' rights. It is because of

the Defendants' rules, policies and design and implementation of the DD Waiver and its

waitlist that Plaintiffs are currently institutionalized or at risk of institutionalization. Even

the unique defenses alleged in Defendant AHCA and APD's motion to dismiss as to one

or more of the individual Plaintiffs does not disturb the typicality among the class and

named representatives. Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 137 (5th Cir. 2005).

Rather, the Court's inquiry should focus on whether the "class representative's claims

have the same essential characteristics as those of the putative class." <u>James v. City of Dallas</u>, 254 F.3d 551, 571 (5th Cir. 2001). Typicality is satisfied if the claims arise from "a similar course of conduct and share the same legal theory" and "factual differences will not defeat typicality." <u>Id.</u>; *see* <u>Mullen v. Treasure Chest Casino, LLC</u>, 186 F.3d 620 (5th Cir. 1999), *cert. denied*, 528 U.S. 1159 (2000); *see also* <u>Edmonds v. Levine</u>, 233 F.R.D. 638, 641 (S.D. Fla. 2006) (differences in medical conditions and prescriptions "irrelevant for purposes of the typicality requirement" because the action of Medicaid agency to deny the service and the underlying rationale for the denial were identical for each named plaintiff to those of each proposed class member).

Each named Plaintiff is precluded from community services because of the Defendants' design and implementation of the DD Waiver and the DD Waiver waitlist. Plaintiffs are currently institutionalized or at risk of institutionalization because of Defendants' refusal to provide community services. Each Plaintiff's ability to receive services in the community is thwarted by Defendants' continued reliance on the arbitrary "cap" on the number of persons eligible for community services. One subclass of Plaintiffs will never be classified as category one/crisis category, as they are currently institutionalized by the Defendants, effectively eliminating any chance of meeting Defendants' crisis criteria. Yet, Defendants claim that, pursuant to proviso language in this year's appropriations act, these Plaintiffs and the corresponding subclass members are eligible to transfer their institutional funds to the DD Waiver to receive services in the community. As there are 1,518 institutionalized persons the Defendants identify as eligible to benefit from this proviso language, then the Defendants must either admit that

(a) there are 1,518 available slots or (b) the arbitrary "cap" on the number of DD Waiver recipients is a soft cap, relevant only to cost-neutrality and capable of expansion to accommodate these individuals and therefore others. In other words, either there are enough available slots to accommodate those persons waitlisted in institutions, or the Defendants "cap" on services is just an easily modified administrative barrier to the deinstitutionalization and diversion from institutions of persons with developmental disabilities.

The putative class challenges the Defendants' refusal to expand the DD Waiver if necessary or to provide those available slots to the putative class members. As Defendants have deemed a putative subclass eligible for those 1,518 available DD Waiver slots (which must exist if the proviso language is to have any affect), that subclass of persons--represented by Plaintiffs Joanna Dykes, David Walker, Loretta Davis, and Heather Young--are the epitome of representatives to challenge the provision of those community services to them in a reasonably prompt manner along with their ability to choose providers. *See* 42 U.S.C. § 1396a(a)(8), § 1396n(c)(2)(C) and § 1396a(a)(23). *See also* 42 C.F.R. § 435.930, §441.302. While they are institutionalized, these Plaintiffs are receiving services through the facility, but they are entitled to seek services through any willing provider and have those funded in a reasonably prompt manner. The freedom of choice provision places an affirmative duty upon the Defendants to inform those class members of any feasible alternatives available under the waiver; and give them the choice of either institutional or home and community-based services. 42 C.F.R. § 441.302(d). Surely, this provision, which has been held to confer enforceable

rights, must be read together with other Medicaid provisions including the ability to fund

those choices in a reasonably prompt manner. Essentially, the freedom of choice

provisions and their implementing regulations must mean more than the ability to check a

box on an application. *See* Doe v. Kidd, 501 F.3d 348, 357 (4th Cir. 2007) (§

1396a(a)(23) requires state Medicaid plans to provide that any recipient of Medicaid

assistance be able to choose among a range of qualified providers); *see also* Ball v.

Rodgers, 492 F.3d 1094, 1116 (9th Cir. 2007)(§ 1396n(c)(2)(C) requires a state to provide

its "HCBS-eligible" [Home and Community Based Service]  patient population with

specific rights and services.) To date, the Defendants have not informed those class

members of their eligibility to transfer their institutional funds to the DD Waiver nor have

they funded that choice in a reasonably prompt manner. *See* Laws of Florida, Chapter

2011-69, and Specific Appropriation 206.

Conversely, if Defendants' contention is that they cannot provide community

services chosen by the applicants in a reasonably prompt manner because they do not

*feasibly* exist, then such information must be relayed to those applicants. Presumably, this

is the defense to those class members forgoing services in order to remain in the

community. Plaintiffs, Joshua Woodward, Amanda Pivinski, Alyssa Ferraro, and

Michelle Congden are typical of these putative class members living in the community

without services. Their challenge to the reasonably prompt provision of community

services and their ability to choose providers based on the Defendants' refusal to expand

the DD Waiver to accommodate them, or provide existing DD Waiver slots to them, is

consistent among the claims of the proposed class. The Defendants' action of allowing

only those persons they deem to be meeting the criteria for category one of the prioritization categories, makes that category the only coveted category. Without such a designation from the Defendants, these Plaintiffs and similar class members residing in the community are virtually cut off from receiving services unless they abandon their homes and families for confinement in an institution.

The proposed class representatives are challenging the discriminatory nature of Defendants' enactment and implementation of rules and policies that relegate persons eligible for community services to a permanent waitlist, while allocating resources to serving those same eligible persons in institutional settings rather than expanding community based services. The named Plaintiffs and putative class members have identical legal claims and seek the same declaratory and injunctive relief. Therefore, the requirement of Fed. R. Civ. P. 23(a)(3) is met in this case in that the "claims or defenses of the representative parties are typical of the claims of the class."

### ADEQUACY OF REPRESENTATION

Rule 23 further requires the class representatives be persons who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two considerations exist to determine adequacy: (1) "whether plaintiff's counsel are qualified, experience and generally able to conduct the proposed litigation," and (2) "whether plaintiffs have interests antagonistic to those of the rest of the class." Kirkpatrick v. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987) (quoting Griffin v. Carlin, 755 F.2d 1516, 1532 (11th Cir. 1985)). The Plaintiffs and their counsel satisfy both considerations.

Plaintiffs are represented by Disability Rights Florida, Inc., d/b/a Disability Rights Florida, formerly known as the "Advocacy Center for Persons with Disabilities, Inc." Disability Rights Florida, a not-for-profit-corporation serves as Florida's federally funded protection and advocacy system for individuals with disabilities (the "P&A"). The P&A's mission is to advance the dignity, equality, self-determination, and expressed choices of all individuals with disabilities in Florida. Under its federal mandate, the P&A is authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of all individuals with disabilities within the State of Florida. Specifically, on behalf of persons with developmental disabilities, the P&A is authorized by federal law to "pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals within the State who are or who may be eligible for treatment, services, or habilitation, or who are being considered for a change in living arrangements." *See* 42 U.S.C. §15041; 42 U.S.C §15043 (a)(2)(A)(i). The P&A has represented and continues to represent persons with developmental disabilities in individual actions, class actions and systemic relief initiatives affecting all such individuals.

Plaintiffs are represented by a team of attorneys and litigation staff at Disability Rights Florida who are qualified to prosecute the purported class' claims and will vigorously litigate the matter on behalf of the class. Disability Rights Florida maintains three offices throughout the state employing attorneys, paralegals, and advocates. In accordance with its mandate, the P&A has historically managed systemic class actions on

behalf of persons with disabilities. As the P&A, Disability Rights Florida is part of the National Disability Rights Network ("NDRN"). NDRN is the nonprofit membership organization for the federally mandated Protection and Advocacy Systems and provides technical and legal assistance to the state P&As.

Plaintiffs are represented by MaryEllen McDonald, Esquire, who has been a member of The Florida Bar for twenty-five years. Ms. McDonald has significant experience in the areas of disability law and civil rights litigation. Ms. McDonald has worked for various state agencies within the state of Florida and in recent past was the Assistant General Counsel for the Department of Elder Affairs and Chief Legal Counsel for the Department of Children and Families.

Plaintiffs are also represented by Paul E. Liles, Esquire, who has been a member of The Florida Bar for 19 years. During this time, Mr. Liles conducted 39 extensive administrative hearings, most of which involved persons with disabilities. He has handled more than 57 trials in state court and 15 trials in federal court, six of which involved civil rights issues. Mr. Liles has also completed 16 state appeals. His five federal appeals involved both civil rights and special education law. He has significant experience in the area of civil rights law, special education law, and practice in the federal courts, and his vigorous and zealous advocacy was noted by United States Magistrate Judge Frazier in *School Bd. of Lee County, Florida v. E.S.*, Dkt. No. 2:06-cv-198-FtM-29DNF, 2008 WL 479365, *4 (M.D. Fla., Nov. 2, 2008). In addition to this case, Mr. Liles has two pending federal cases, one of which is a class action matter.

Plaintiffs are also represented by Amanda Heystek, Esquire, who has been a member of The Florida Bar for eleven years. Ms. Heystek has significant experience in litigation in criminal, marital and domestic, and administrative proceedings. In addition, Ms. Heystek recently litigated on behalf of Medicaid eligible children with developmental disabilities seeking services pursuant to the federal mandate of Early, Periodic, Screening, Diagnosis and Treatment in Case No. 4:10-CV-00088-RH-WCS (N.D. Fla.). The matter was settled before the question of class certification was determined. Plaintiffs are also represented by Christopher White, Esquire, who has been a member of The Florida Bar for three years. Mr. White has practiced disability civil rights litigation exclusively, and has significant experience with Medicaid law in administrative hearings.

Plaintiffs' counsel pursued over two years of investigation into the matter of Defendants' waitlist for the DD Waiver. Plaintiffs' counsel has engaged in interviews with potential class members, as well as experts and stakeholders in the field. Disability Rights Florida maintains systems to receive potential class members and provide notice or other requirements of the Court to the putative class members. Disability Rights Florida has dedicated staff and monies to see this matter through the legal system for class members' relief. It would be difficult for class members to sustain individual actions due to their income levels and disability status.

The putative class members share a common interest to receive home and community-based services and avoid institutionalization. While there may be variations in the living arrangement of the putative class, that does not alter the relief sought. In

essence, all of the putative class members are at different stages of the successive line to institutionalization. Some are waiting patiently for services, others have applied for crisis enrollment and were denied; some have family that are withering from the demands of providing services but are reluctant to give up their loved ones to strangers, others were directed by the Defendants to institutional placements due to lack of community services. However, all putative class members seek community services, with no hope in sight. Many Plaintiffs have lost skills acquired through the educational system, others have sacrificed potential employment, and some have lost the companionship of their caregivers who burned out trying to meet all of the Plaintiff's needs; yet all seek community services to promote their independence, avoid segregation, have self-determination, and live in their community. The putative class members share a common interest for the DD Waiver waitlist to move at a reasonable pace and for all persons on the waitlist to be able to receive services in the community instead of institutional settings. The class representatives and the putative class do not have interests antagonistic to each other.

## *DEFENDANT HAS ACTED OR REFUSED TO ACT ON GROUNDS GENERALLY APPLICABLE TO THE CLASS MAKING FINAL INJUNCTIVE AND DECLARATORY RELIEF APPROPRIATE FOR THE CLASS AS A WHOLE*

Defendants have "acted or refused to act on grounds equally applicable to the class" and "final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole" is appropriate. Fed. R. Civ. P. 23(b)(2). This rule was intended "primarily to facilitate civil rights class

actions, where the class representatives typically sought broad injunctive or declaratory

relief against discriminatory practices." <u>Hernandez v. Medows</u>, 209 F.R.D. 665 (S.D. Fla.

2002) quoting <u>Penson v. Terminal Transport Co., Inc.,</u> 634 F.2d 989, 993 (5th Cir.1981)

(citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)).

      Courts have interpreted this provision to mean that the opposing party has acted in

a consistent manner toward members of the class or as part of a pattern of activity, or has

established a regulatory scheme or set of practices common to all class members.

<u>Leszecynski v. Alliance Ins. Co.,</u> 176 F.R.D. 659, 673-674 (S.D. Fla. 1997). Cases

seeking declaratory or injunctive relief are particularly appropriate for certification under

Rule 23(b)(2). <u>Curtis v. Commissioner, Maine Dept. of Human Services,</u> 159 F.R.D. 339

at 341 (D.Me. 1994). Plaintiffs' allegations satisfy this requirement. The Defendants'

regulatory scheme, resource allocation, implementation of the waitlist, and omissions in

amending the DD Waivers placed members of the putative class in institutions and

subjects others to the risk of institutionalization and furthermore deprives them of the

Medicaid Act's protections for reasonable promptness, freedom of choice and due

process. Plaintiffs seek the same declaratory and injunctive remedy that will provide

relief to all putative class members.

## CONCLUSION

      Plaintiffs therefore respectfully move this court to certify that this action may

proceed as a class action on behalf of the class defined above.

Dated this 31st day of August 2011.

                        By    s/ Amanda Heystek
                              Amanda Heystek, Esquire

Florida Bar No. 0285020
**Disability Rights Florida**
1000 N. Ashley Drive, Suite 640
Tampa, Florida 33602
(850) 488-9071  Telephone
(850) 488-8640  Facsimile
amandah@disabilityrightsflorida.org
Lead Trial Counsel


By      s/ Paul E. Liles
Paul E. Liles, Esquire
Florida Bar No. 0921270
**Disability Rights Florida**
Senior Trial Counsel
paull@disabilityrightsflorida.org
Christopher White,  Esquire
Florida Bar No. 0060109
christopherw@disabilityrightsflorida.org
1000 N. Ashley Drive, Suite 640
Tampa, Florida 33602
Maryellen McDonald,
Director of Legal and Advocacy Services
Florida Bar No. 607533
maryellenm@disabilityrightsflorida.org
2728 Centerview Drive, Suite 102
Tallahasseee, FL 32301
(850) 488-9071  Telephone
(850) 488-8640  Facsimile

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by
CM/ECF to all attorneys of record this 31st day of August, 2011.

By      s/ Amanda E. Heystek
Amanda E. Heystek, Esquire
Florida Bar No. 0285020
**Disability Rights Florida, Inc.**
1000 N. Ashley Drive, Suite 640
Tampa, Florida 33602
(850) 488-9071 Telephone
(850) 488-8640 Facsimile
amandah@disabilityrightsflorida.org